All right, the next case on the calendar is United States of America v. Mohamed Houtar, and we have Ms. Lee for the government, who has reserved two minutes for rebuttal. Ms. Lee? Yes, thank you. Actually, it's, I'm here from the Federal Defenders, and I'm on behalf of them. Oh, I'm sorry. I got, I'm sorry. That's my fault. I'm new to this presiding role. No problem. Good morning, Your Honors. Eunice Lee from the Federal Defenders for Mr. Houtar. The International Parental Kidnapping Act, referred to here as IPCA, is unconstitutionally void for vagueness because it permits its unlimited application whenever a child has, quote, has been in the United States, unquote, at any time and for any period of time, even when that presence in the United States is unconnected to the unlawful conduct. Here, where Mr. Houtar did not abduct his children and where his wrongful retention of them occurred five years after their lawful departure from the United States, application of the statute here violates due process. Ms. Lee, let me ask you a question. I just want to make sure we're on the same page as to what standard we're operating under for purposes of vagueness, because in your brief, you had some interesting hypotheticals of someone who comes into the country for a minute on vacation and somehow is brought within the sweep of the statute. But I think it's pretty clear under our law that you have to prove that it's vague as applied to your client's criminal conduct. Correct? Correct. And the conduct at issue here is that the circumstance of someone who is being accused only of unlawful retention as opposed to the circumstance of- All right. The connection of these children, the connection to the United States is very substantial in this case. It's nothing like the kind of instance where somebody, where the child has been in the United States for a brief moment passing through. They were citizens, they had resided here. It's a very substantial connection. Well, Your Honor, it's not so much about just frankly the children's connection to the United States. The reality is the statute applies to children who are citizens or non-citizens. It doesn't make that distinction at all. So it's not their citizenship that makes them subject. It's frankly the idea that their presence in the country, to the extent that that's a defining characteristic that says, oh, this is how the statute is going to apply. When that presence is not connected to the unlawful conduct, which here is simply the retention in another country. That is unique. I mean, in most of these cases, you're talking about an abduction. Obviously, if you abduct a child from the United States, it's clearly covered by the statute. Here, where the statute's coverage of retention simply says, well, if a child has been in the United States at any point for any time, you're subject to this kidnapping statute. Even if your conduct is not connected, there's no nexus between your conduct and their presence in this country. I know, but the statute- You're saying this is unusual because you have retention without abduction. Correct. And it's not, neither party was able to cite it to a case involving only retention. And it's in the retention context where you have that notice problem, because it's not foreseeable that your conduct in this case would be subject to this statute, given the fact that your unlawful conduct is not- There's another element here. It has to be for the purpose of abridging someone's parental rights. And that element is arguably here. It's certainly, I mean, I think it's a question of that element is here. And it's not, we're not, the claim is not that the statute, that all elements of the statute are void for vagueness. But the presence requirement, the idea that your children's years prior presence in the United States is subjecting to it, is that component of the statute, in fact, that creates a vagueness problem. That's the component of it of which you would not have noticed, given the way that this is worded. Why, Ms. Lee, if it says or, it doesn't, when you say, you know, it doesn't say abduction and retention. It says abduction or retention. So why would anybody looking at that think, as long as I don't abduct these children, this is not going to apply to me. I don't understand if it says or, why there would be any, I understand it may be factually most of these cases include abduction, but that's not, that doesn't make it vague just because most of the time there's also an abduction is what the wording of the statute is. It's not a question of saying that retention is not covered by the statute or that it's not, it doesn't apply to cases like this that only involve a retention. It's getting to the question of why is there, what's the notice problem here? And when you have a situation that does not involve an abduction, it's not, it doesn't mean, well, you wouldn't, you know, you don't have noticed that, that retention is unlawful. It's that, will you have noticed that retention that occurs in a fashion that is unconnected to the presence, that the fact, would you have noticed that even though your children have not been in the country for five years, you committed no unlawful action in the country, you did not remove them unlawfully. Is this wording that just says, well, they've been in the United States. Does that give fair notice that a retention only is covered by this? That's, it's not a question of whether or not the statute- If you had two children in the United States, they're 10 and 11 years old. They've been here all their whole life. You and your wife go on vacation overseas. The husband unlawfully takes them overseas and the wife can't get them back. She comes back to the United States. It takes her a few years to go through the family court system to get an order to say, you know, I should have those children back in the United States, bring those children back, produce them in the United States. Your argument would be that defendant would have no idea that he could be subject to this statute because it wasn't unlawful to abduct them. You didn't do anything in the United States to abduct them. And it took years before he was told that he had to bring them back. Well, I mean, the potential for liability of some kind in the family court, assuming that the court could get jurisdiction that he's, you know, back in the United States or what have you, there might be some form of liability, but it does still create, the statute does still permit a notice problem in that context. That specific example that your honor has given, perhaps in that situation, there wouldn't be a notice problem. Why? Because of all the characteristics you've identified as being problematic. There was no abduction. It wasn't unlawful to take them out of the country. And a long time went by before he was told that he had to bring them back. It has all the elements that you're saying make it vague. Well, part of what makes, I mean, not to sort of parse out the factual hypothetical too much, but part of what is different about the hypothetical is that the wrongful conduct, in fact, is occurring immediately after. I mean, there's more of a connection between their presence in the United States and the wrongful conduct when they leave the country. And two weeks after they leave the country, the wrongful behavior occurs. Here, there's years of no wrongful behavior. It's not just years between the incident and the family court proceedings. It was years with no unlawful behavior. And that is different from a situation where you leave the country, two weeks later, you retain them, and then it takes a period of years for that to be pursued. This is really a very unique circumstance. And it's in this circumstance that a rule that just says, if they've been in the United States for five minutes or five years, and even if that's not connected to what you're accused of doing that's unlawful, that that's still covered. That doesn't give proper notice in that particular context. I see my time is up. I'm happy to un-rebuttal if your honors would like to address it. If the presider wouldn't mind, I would like you to address the false statement on the passport issue. Absolutely, your honor. The enhancement for obtaining or using a passport should not have applied because under the plain meaning of the guideline, Mr. Huttar did not, in fact, he certainly didn't obtain and he did not use the physical item of a passport. And that's the interpretation of the guideline, in fact. But haven't you just added the term the physical item of the passport? I mean, if you have a passport, one of the things you have is you have a number. And that's valuable because if you lose your passport, having that number is really all you need. Right, your honor, though, the guideline doesn't refer to using information from the passport. What it talks about is obtaining or using a passport. A passport is a tangible item. Yes, it has information that you can get from it, but from the way that the guideline is worded, and again, the way everyone using the plain language initially interpreted using is deploying something. And here where it doesn't, where the, it's clear he did not deploy an item and he did not use that tangible item to say that. Application note three, application note three says the term used is to be construed broadly and includes the attempted renewal of previously issued passports. Why isn't that squarely, squarely rejecting? Why doesn't that squarely reject your argument? Well, the fact that it's saying that this guideline enhancement applies to the circumstance of an attempted renewal does not mean that it's taken. That application guideline doesn't change the fact that the, excuse me, the note doesn't change the fact that the guideline is still requiring use. That doesn't, saying that the use is construed broadly does not mean that use, it doesn't broaden sort of what the word use means. It seems, frankly, what that's referring to is using your passport to apply for a renewal by presenting the passport. It doesn't say the existence of a passport means that you have used it. That's, again, to the extent that the note suggests something different, the plain language of the guideline does not support that because it talks about obtaining or using a passport. And in that context where, again, a passport is in fact an item, it's a tangible thing, using the passport versus using, you know, information that can be obtained from that is not the same thing. That's not obvious from the language of the guideline. And to the extent that there's a discrepancy from the note, certainly under the rules of the law and of how they're interpreted, the more lenient interpretation should be the one that's applied here. Then the interpretation, in fact, that all the parties initially adopted. It would have to be a plainly erroneous reading of the guideline for us to ignore what the note says. But let me just ask, if you are filling out a government application on a computer and it asks you for your driver's license number and you put in that number, aren't you using your driver's license? I think you are. You're using it. I'm using the information from my driver's license. I'm not using the license. It wouldn't be reasonable for someone to say under those circumstances, you're using the license. I mean, I would be relying on the license. But I mean, again, use in its most basic definition is talking about deployment of a thing. And to the extent it's going to be interpreted as, well, I'm relying on the fact that I have a driver's license. Yes. I'm relying on the information from my driver's license. Yes. But is it clear that you are? It seems to me you are construing the application note as if it said includes the presentation of the old passport in the attempted renewal of it. But it doesn't say that. As I read that note, it would apply to somebody who, without presenting the passport, somehow submits an application for its renewal. Well, I think it doesn't require on its face that the passport be presented in the application for renewal. But you're construing it as if it did. Well, I mean, I think part of the problem, I guess, with that interpretation is under that circumstance, anytime anyone, it would be impossible to be guilty of this offense without having this enhancement apply. Because if you're applying for a renewal, of course, that presumes you have already or you had previously a passport. And so if the argument is that, well, clearly to apply for renewal, you must have had initial passport. It has a number. You've, in some way, you're relying on the fact that this prior passport existed. Then it really doesn't because it's not in the way of an enhancement. It's more of, well, it must apply in every instance. If it doesn't require anything more than that. It only applies to fraudulent. It's, I'm sorry? It applies, requires fraud, requires fraud. Right. I mean, but under this enhancement, which is for making false statements in a passport application, under that, someone convicted of that inherently in a renewal, then they would, they'd get this bump automatically because in every renewal, there was a prior application. And if use means that you're relying on the fact that this prior application existed and that it has a number and that it has information, if use is meant to encompass that, then in every attempted renewal case that falls under this, this would apply. And so it would take the nature of an automatic, almost just inherent offense conduct, rather than really an enhancement based on aggravating behavior. All right. Thank you very much, Ms. Lee. All right. We'll now hear from the government, Ms. Macchiaverna. Good morning. Elizabeth Macchiaverna representing the United States as I did in the proceedings before the district court. If it's acceptable to the court, I'll focus first on the vagueness question. I think it's important to note at the outset that the vagueness question as presented by the appellant is in some ways hypothetical. At first, it's notable that the narrative presented here that the appellant is a person who lawfully moved to Yemen and resided there for a number of years with his family lawfully before he was subject to parental kidnapping case charges here in the US is based in part on facts that are irrelevant and outside of the record. Even accepting that version of the facts is true, that's not a complete picture. The full picture shows that the appellant's conduct falls squarely within that prohibited by IPCA and that he therefore had notice of the statute's reach because it's uncontested that the appellant waived any jurisdictional challenge to the family court's authority to issue orders concerning the children. And that he was present and aided by an attorney at a number of family court proceedings, including the one in September of 2016, where the family court issued a visitation order that granted the mother the parental rights at issue here. The defendant's failure to return the children following the issuance of that visitation order is the kidnapping. The defendant didn't seek a stay, he didn't appeal that order. Instead, he chose to flee the jurisdiction in violation of another family court order, which required him to stay in New York. And he returned to Yemen and he did so with the intention of obstructing the mother's rights to her children. It's a basic proposition and fundamental to the rule of law that court orders have to be complied with promptly, absent a stay. The first element of IPCA, which requires the kidnapped child in a retention case have been in the United States, is not vague in light of those uncontested facts. And the fact that this is a retention case shouldn't change that analysis. The statute's clear on its face, there's no distinguishing between removal or retention. Both actions are equally considered to be kidnapping under the law. And IPCA does not need to provide a timeline for how long a child need be in the United States to trigger the application of charges under the statute. That's not necessary to provide clarity to lay people or to law enforcement concerning the enforcement of this statute, because the conduct prohibited by the statute is entirely clear on its face, and it means what it says. It makes clear that where a child who has been in the United States is kept outside of the United States with the intention of violating the other parent's parental rights, lawful parental rights, they can be held criminally liable for that conduct. The requirement that the child has been in the US serves to ensure that there is sufficient nexus between the wrongfully retained child and the United States. It doesn't need to be linked to any kind of timeframe to adequately describe what could be criminal under the statute. Let me ask you this. You know, this is a situation in which the child was retained, but the removal from the United States was lawful and unexceptional in any way. Wouldn't removal, wouldn't retention require the defendant to have kept the child in another country in violation of existing parental rights? And here, I don't see who has custody. I don't think there was ever a custody agreement. I think there's actually been, that's not on the record below. There was no decision about whether there was a custody. There was a criminal case, if there's nothing in the record, saying whether his being with the children abroad was in violation of anybody's rights, then he didn't really have an obligation to bring the children back. And the, in absent, the obligation pursuant to existing parental rights to bring the child back would seem to suggest there's nothing wrong with his retaining then. He did have an obligation once the family court to which, to whose jurisdiction he had subjected himself, issued an order requiring him to return the children to the United States. So it is the order that made the retention unlawful, not any existing right of the parent and not any existing parental right. Yes, Your Honor. That's how the case was charged and that's what the defendant applied to. That order triggered his obligation to return the children to the United States. So if there are no further questions concerning the notice issue, I could turn next to the path, the use of the passport in connection, the previously issued passport in connection with the fraudulent application. I'd just like to draw the court's attention briefly to the government's supplemental appendix on page GA-292. It makes clear that the defendant, that the appellant did in fact reference his previously issued passport by number in his application. He did not physically present it. He's correct when he makes that assertion. He couldn't have, of course, because he was falsely representing that it had been stolen. But the word use cannot possibly refer only to physically presenting the physical document. I think as the court noted, in our society, we frequently use important identifying numbers in a way that are divorced from their underlying documents all the time. You can use your credit card to purchase something by just providing the number and expiration date. You can use your social security number without providing the card by just entering that number onto a form. So it is consistent in the government's view with the ordinary usage of the word use to suggest that you could use that passport by reference to its number. Ms. Lee would be correct then. I think that anytime someone fraudulently did something fraudulently to try to obtain a renewal in every situation, this two-point enhancement would be appropriate because they're always going to use the number from the previous passport that's the requirement in order to get the renewal. So this is going to apply in every single fraudulent renewal case this enhancement would apply, right? I don't know that you would always inherently have to use the number. If you don't know the number of your previously issued passport for some reason, you might make a representation that you've had one by providing your name and maybe some other identifying information. So I don't think that we can assume that it would apply in every single situation. And then just very briefly on the issue of whether the district court, if the court would like to hear, properly applied that three-level enhancement for substantial interference with the administration of justice under the guidelines in connection with the kidnapping convictions. The defendant has made two alternative arguments. The first is that his failure to produce the children in connection with the September visitation order can't be the basis of this enhancement because it is the underlying offense conduct. But his conduct in fleeing the jurisdiction violated another court order and it also rendered the family court unable to do anything to enforce the visitation order. And I think his argument is foreclosed by the court's decisions in Amir and Hassan which although they involve both abduction and retention, the important aspects of those cases as concerns the application of this enhancement and the fact that aligns them with this case is that those appellants, those defendants, subsequently retained the children outside of the United States in violation of court order. And the purpose of the retention in those cases was to thwart the application of the family court in orders that were issued in favor of the victim parents, which so to hear. That's exactly the position that the appellant was in when he fled the country. I would like to go back to your prior issue. Supposing that the person did not use the number because they didn't know the number but simply applied for reissuance with fraudulent statements asserting that he had a prior passport but didn't fill in the number. I understood your position from your briefing to be that would apply nonetheless, that it didn't require use of the number to be using the passport, but you would be using the fact of the passport and its existence and your entitlement to get a replacement in applying with fraudulent statements for a replacement. Do you not take that position? I don't think that it's an interesting question. I don't think the court needs to reach it here because the defendant, the appellant in this case did in fact use the number and he did in fact use his passport by reference to that number. All right. I think your time is up. Thank you. Thank you. Ms. Lee, you have two minutes for rebuttal. Thank you. Just one point on the back with regard to the vagueness of the statute. I mean, I think the circumstance of this case really do highlight the lack of notice. And with regard to the fact that it was only the family court proceedings that triggered an unlawful action here that made this unlawful, the fact that he, that Mr. Huttar conceded to jurisdiction in the family court when what was at issue and what was the basis for jurisdiction in the family court was simply residency. The proceedings did not go into, it was not based on the children's presence. Obviously they were not present when this happened. And so again, it highlights the fact that he would not have had notice from those family court proceedings alone because this was only retention that he was going to be subject to the statute. With regard to the use of a passport and whether or not it be reasonable to interpret use as using the number or using the information. In fact, that is not the common understanding of the word outside this specific scenario. And with regard to the idea that people can be charged with using fraudulent use of credit cards and numbers and those types of things, those statutes almost universally actually say things like you are subject to an offense for using a credit card, including its numbers, its information, that type of thing. In common understanding of use, it doesn't incorporate, you're using the fact that something exists and that it has information. And so that's not sort of the standard here. And again, the words of the guidelines itself don't support that interpretation. With regard to the substantial interference in Mr. Huttar's flight from the jurisdiction, the guideline is very clear that the action has to result in interference. Here, his departure from the jurisdiction did not constitute interference under any of the enumerated sections of the guidelines. And it also, in fact, did not interfere with the family court proceedings, which went to judgment. His additional flight, whether it's wrongful or not, did not actually result in substantial interference, which is required under the guideline. Well, let me just say something on that last point. If he was here, he could have been found in contempt. He could have been jailed and that could have resulted in the children being brought back, right? Can we say that there was the inability to enforce that judgment? It's not, I mean, that's a sort of, I guess, a factual question as to whether or not that would have resulted in the children being returned sooner, but it certainly did not interfere with legal proceedings in the sense of preventing or delaying the hearing, the judgment. Again, family court proceedings immediately proceeded to judgment without his presence. So it didn't interfere in that sense. And I think the idea of whether or not it would have resulted in the children being returned sooner, that it's, I mean, in some ways that's speculation. But as far as the things that the guideline points to as constituting interference, this definitely does not fall with any of the, within any of those. All right. All right. Thank you to both of you. We'll reserve the decision. Thank you. Thank you.